IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No.    15-CV-1995

Christopher FISCHER, Jessica FISCHER, M.F. (by and through her next
friend Jessica Fischer) and T.F. (by and through his next friend Jessica
Fischer),

       Plaintiffs,

Drew KLESCEWSKI, Nichole BACKUS, H&M Hennes & Mauritz LP
("H&M"), Officer Josh VAUGHN, Broomfield Police Department (sued in
his personal capacity for damages); Officer Michael DEEDON, Broomfield
Police Department (sued in his personal capacity for damages); Officer
Jeremy EHRLICH, Broomfield Police Department (sued in his personal
capacity for damages); and Sergeant Heidi WALTS, Broomfield Police
Department (sued in her personal capacity for damages);

       Defendants.

_____

## COMPLAINT
_____


The Plaintiffs, by and through their attorney, Alison Ruttenberg,

complains against the Defendants as follows:

## JURISDICTION OF THE COURT

1.      This action arises under the Constitution and laws of the United States.  The claim against the Broomfield police officers is brought pursuant to Title 42 USC §1983.  Jurisdiction is conferred on this Court pursuant to Title 28 USC §1331.  Jurisdiction supporting the Plaintiff's claim for attorney fees and costs is conferred by 42 USC §1988.  Supplemental jurisdiction over Plaintiff's pendent cause of action against H&M and its employees is for Plaintiffs' state law causes of action (which arise out of the common nucleus of operative facts as the Plaintiffs' federal civil rights claim) are conferred by 28 USC 1367.

2.   Venue is proper in the District of Colorado pursuant to 28 USC §1391(b).  All of the events relevant to the claims set forth in this Complaint occurred within Broomfield County, Colorado.

## PARTIES

3.   At all times material to this Complaint, the Plaintiffs were citizens of the United States and Colorado.  They reside at 7398 Augusta Drive, Boulder Colorado.  On the evening of December 14, 2014 they had no criminal record whatsoever.

4.      The Police Officer Defendants are officers of the Broomfield Police Departments, and were acting under color of state law (within the meaning of 42 USC 1983) at all times material to this Complaint and are

sued in their personal capacity for damages.  The remaining Defendants are individual were employees of H&M at Flatiron Crossing (1 W Flatiron Crossing Dr., Broomfield CO  80021) on the evening of December 14, 2014 and the H&M Corporation itself -- H&M Hennes & Mauritz LP (hereinafter referred to as "H&M").  H&M is a Swedish multinational retail clothing company, with its principal office street address at 100 Porete Ave, North Arlington NJ 07031.  Its Registered Agent in Colorado is the Corporation Company at 1675 Broadway Suite #1200, Denver CO  80202.  H&M is the target of numerous complaints and lawsuits for the rascist, unethical and rude treatment of its customers.  H&M was sued in a class action in 2012 for violating California labor laws by making hourly employees work their lunch and rest breaks while still deducting the time from their paychecks. H&M was sued in another lawsuit for arresting a 59 year old African American Grandmother for shoplifting even though a clerk acknowledged that she prepaid for the shirt.  H&M employees told her that she "looked like a common thief."  Drew ` at the Flatiron Crossing H&M behaves toward customers in a similarly rude and obnoxious manner.

5.    The history of H&M started with a man named Erling Persson, who was a Swedish former salesman that became fascinated with America's high-volume efficient outfits that Barneys and Macy's carried. Persson first

discovered the outfits when coming to the United States after World War II. Persson brought the retail concept – that high turnover produced lower prices – and brought it back with him to Sweden. It was then that Erling chose to open his own store which he called Hennes, standing for "hers" in Swedish. During this time the store only sold women's clothing.  The company Hennes was established in 1947 in Vasteras, Sweden and by 1968 Persson had purchased the men's sportswear inventory and property of a Stockholm hunting equipment store which was named Mauritz Widforss. Erling Persson then changed the name of his store Hennes to Hennes & Mauritz to express the expansion, and later downgraded to just the abbreviations H&M.  When Persson began to exporting his business overseas he began with Norway in 1964 and then joined Denmark in 1967. Persson bought the inventory, which was a left supply of men's clothing which lead him to expand into men's apparel.  By 1970 Hennes & Mauritz developed a children's clothing line and by 1978 the store offered much of all family clothing.  With Hennes & Mauritz offering a wide range of family clothing, it helped the company expand with the new generation of youth wanting to be able to express their individualities. Besides its Scandinavian base, Hennes & Mauritz expanded into the British market by 1976 with mixed results, however while a long growth retained, by the later years of

the 1990's H&M realized that their company had better results in their

European market than their Scandinavian market. Back in Sweden, Persson

developed a Rowells mail-order company which in turn was the pedestal for

H&M Rowells, H&M's mail-order subsidiary. Persson then expanded the

company into Switzerland's main cities which promptly became a

stronghold.  H&M is known for being of good quality and of good price.

Persson's son had soon to become the lead of the company, expanding stores

slowly across Sweden and by 1990 became one of the largest Swedish retail

stores.  During this period of expanding internationally to which Persson

referred to it as "global fashion," he began to realize the surfacing of trends.

Television shows such as on MTV, celebrities in Hollywood, Madison

Avenue Advertising, and the internet invented the national boarder fads

among teenagers and other groups around the world.  By 2000 H&M finally

came to the United States after historically being a European brand and set

its dominance (International Directory of Company Histories, 1999).  There

is an H&M retail store in Flatirons Mall in Broomfield Colorado.  It is at this

store where the events of December 14, 2014 took place.

     6.    The Plaintiffs are a family.  Christopher and Jessica Fischer are

husband and wife, and their daughter M.F was eight years old on December

14, 2014 and their son T.F. was five years old.

7.    Drew Klescewski represents himself as a "Department Manager" at the Flatirons H&M store and brags that he is a "driven, goal oriented, change leader that enjoys [his] work." On his LinkedIn Profile he represents that when he comes to work, he creates "an open atmosphere where anyone can share feedback with me." In reality, he is a rude and nasty jerk, who has alienated customers of H&M, not just the Plaintiffs. Nichole Backus was one of his underlings on the evening of December 14, 2014.

## FACTUAL BACKGROUND

8.    On the evening of December 14, 2014, the Fischer family went to Flatiron Crossing Mall in Broomfield, Colorado to see Santa Claus. They entered the mall from the parking lot entrance at the rear of H&M. H&M is a store they frequently shop for the entire family (at least until December 14, 2014 – they will never ever darken the door of an H&M store again.) It had been lightly snowing for several hours, and the ground was slippery. The Fischers entered the store through two sets of double doors. M.F., excited to see Santa Claus, ran ahead as the family entered through the double doors. Five year old T.F. had fallen asleep in the car, so Jessica carried him from the car to the store. Because of the negligence of H&M, the floors were wet from the tracked in snow. There were no posted warnings on the outside of

the stores or the doors to beware of the treacherously slippery floors, and the little yellow cone that Drew Klescewski placed to the side of the inside of the door was not visible from the outside and provided no actual warning until it was too late. The carpet or floor mat, that should have been at the entrance of the door was six feet or more from the door, and was obviously misplaced and could not prevent falls. Jessica fell on the slick tile flooring and she and T.F. fell to the hard floor. They could have been seriously injured, but fortunately, they were not.

9. However, both Christopher and Jessica were upset at the extreme negligence of H&M for the treacherous condition of its premises, and they wanted to submit a complaint. She approached Drew Klescewski. She told him what happened and politely suggested they put a carpet down to prevent other customers from being hurt. Drew Klescewski smirked in response and said: "I don't have the authority to do that. That's why we have that little sign there, it covers us" or words to that effect. He was rude, obnoxious and displaced a reckless attitude toward customer safety. The Fischer family did not realize that he was actually *the* Manager, and of course *the* Manager had the authority to make accommodations for customer safety. Drew Klescewski seemed only to be concerned with pointing out (incorrectly) that H&M had no premises liability if customers fell on its

treacherously slick floors. His attitude irritated Christopher, and he said: "You mean legally?" Drew Klescewski responded: "Yes." Christopher then said: "Are you kidding? That's how you take care of your customers?" Based on Drew Klescewski rude and unprofessional attitude, the Fischers concluded that they have spoken to a low level or untrained employee (rather than the "Department Manager.") Drew Klescewski never once asked if Jessica or T.F. were okay. Shocked by his attitude, the Fischers decided to seek out a manager and walked to the center of the store to the cash registers. They politely wait in line for a while to speak to a cashier. The cashier David Fending was standing next to Nichole Backus and he radioed for a "manger" after Jessica politely requested to speak to one. While this was happening, Drew Klescewski moved the little yellow sign on the cone to the center of the double doors so that it would be more visible to customers coming through the double doors from the snow dusted parking lot. He then walked toward the cash registers, grinning at the opportunity to continue his rude attitude toward the Fischers. Jessica asked the cashier in disbelief, "He's the manager?" He responded: "Yes."

10.    Drew Klescewski rudely and condescendingly addressed the Fischer family at the cashier counter. Drew Klescewski was behaving in an increasingly aggressive manner and the video camera clearly shows

Christopher repeatedly stepping *away* from Klescewski during the encounter. Another employee, Taylor Winter, walks by, unfazed by the conversation. If Christopher were acting aggressively and violently provoking Drew Klescewski (as he later falsely alleged to the police), she would not have done so. Jessica challenged Drew Klescewski contradictions that he is the "Manager" but does not have the "authority" to make the store safe for its customers. Drew Klescewski insisted that "Corporate doesn't give me the authority to make those type of decisions." Christopher asked him why he had no response to the fact that his wife had just fallen in the store, dropping their five year old to the hard floor, and they could have been seriously injured. Christopher asked to talk to Drew Klescewski's supervisor, and his only response is to huff and smirk and repeat that *he* is THE Manager.

11. Christopher then remarks to his wife, "what an asshole." At no time did Christopher direct this remark at Drew Klescewski; he was just remarking on the obvious fact that Drew Klescewski *was* an asshole. However, Christopher asked Drew Klescewski to give him his name, but Drew Klescewski refused. (The Fischer family learned what his name was from reading the police reports.) Drew Klescewski then ordered Christopher Fischer to leave the store, and if he refused then he was going to call the

police.  Christopher agreed that the police should be called because his wife

fell in the store and could have been hurt.  Meanwhile, the children were

getting bored and they exited H&M at the Mall entrance to wait for their

parents.  Drew Klescewski then walked behind the counter and instructed

Nichole Backus to call 911.  Drew Klescewski then saw the Fischers talking

to Taylor Winter who identified herself as another manager when she

*approached them*, and asked the Fischers if they wanted to fill out an

incident report.   Christopher said "thank you, this is what I expect from a

manager." The Fischers said yes they wanted to fill out an incident report.

Therefore, the Fischers remained in the store at the express invitation of

another Manager to fill out an incident report.  At no time were either of the

Fischer adults yelling, screaming, threatening or causing a disturbance.

They were simply talking to Ms. Winter, in a normal tone of voice, and at

her invitation, regarding filling out an incident report.  Once this Manager

invited the Fischers to fill out an incident report, it was reasonable for them

to conclude that Drew Klescewski's demand that they leave the store had

been overridden.  At one point, for about five seconds, Christopher Fischer

raised his voice in a louder than normal tone, causing some customers to

turn their heads (which is visible of the security camera footage), but all he

said to  Drew Klescewski in this loud voice was "I can't believe you treat

your customers that way" and "you should call the police because my wife fell," or words to that effect. There was nothing in those words that was likely to provoke a violent or disorderly response by a *Department Manager* who should be trained in customer interactions. If he had continued to "yell at the top of his lungs," then the other customers would have reacted to this, and there is nothing to indicate this on the security camera footage.

12. Nichole Backus then made a false 911 call and lied to the police that there was a "customer who is getting really belligerent" and "yelling" at one of the Managers. She also lied and told the 911 dispatcher that Christopher was "swearing at our Manager" and "yelling really loudly and making a scene." She also falsely stated that Christopher was "mad about a sign or something." Another lie that she told was that Christopher was "harassing" Taylor Winter. Christopher had no negative interactions with Taylor Winter, and even Ms. Winters acknowledged later (to Christopher Fischer's criminal attorney) that she was not "harassed" by any member of the Fischer family that evening. When Nichole asked Drew Klescewski where these customers were, he responded "we are going to fill out an incident report for the lady." Drew Klescewski's voice is clearly audible on the 911 recording when he said this. Therefore, had it been true that Christopher was in fact "swearing at our Manager" and "yelling really

loudly and making a scene," it would have been audible on the 911 tape, but it was not.  Nichole Backus knew she was making a false statement to the 911 dispatcher.  She continued with her false statement and told the 911 dispatcher that the Fischers were "hanging out in the front of the store "still making a ruckus."  This was a bare faced lie because at the time Nichole made that statement, Christopher had already exited the store and Jessica was in the back of the store quietly waiting for Ms. Winter to return with the "incident report" form.  As she waits, she takes pictures of the sign on the little yellow cone with her cell phone.  It is clear from the security camera video footage that Jessica is *not* yelling or creating any type of disturbance.  Nichole then told another lie that she could not see the Fischers "but my manger is watching them on the camera."

13.    Officers Deedon, Ehrlich and Vaughn then entered H&M at 6:16pm (less than seven minutes after Jessica fell on the floor while holding T.F.).  Jessica notices Officer Deedon and approached him, assuming he is there to help her because she fell in the store as a result of Drew Klescewski's reckless disregard of customer safety.  Jessica is then surrounded by the three police officers and quickly realizes that they are not there to help her.  They could not care less that she fell while holding her five year old son.  The Police Officers began intimidating her, making her

feel frightened and uncomfortable. She was unlawfully detained by the police for almost an hour, total. She did not understand why they kept asking her where her husband was; she told the police that her husband was in line with the children for Santa Claus.

14.    At 6:21 p.m., Officer Ehrlich existed the store looking for Christopher. At the same time, Drew Klescewski left the back office and went back to the register. The security cameras show him talking to Nichole and seeming to be very jubilant about something. Ehrlich re-entered the store as Ms. Winter finally came out of the office with the form for Jessica. But Drew Klescewski came back and intercepted her. At 6:22 p.m., Ehrlich left the store again to locate Christopher in the Mall. After being harassed by the police officers, Jessica did not want to talk to anyone anymore and refused to answer any questions or provide any personal information. Meanwhile, Ehrlich located Christopher and the children who have been patiently and quietly waiting for Jessica to finish the report and join them to go see Santa Claus.

15.    For the next three minutes, Christopher had a conversation with Officer Ehrlich. He explained that his wife fell and Drew Klescewski was acting unprofessionally. Ehrlich demanded that Christopher acknowledge that he used profanity toward the manager. At this point, Christopher also

recognized that the officer was not there to help.  He denied using profanity toward any "manager."  Ehrlich then lied and said "your wife claims you did."  Christopher recognized this lie because he knew his wife would not have said that.  Ehrlich then continued with his lies and told Christopher that his wife was inside and being very "uncooperative" with the other officers.  Apparently, Ehrlich is so poorly trained by the City of Broomfield that he does not understand that citizens have a Constitutional right to remain silent when questioned by police officers.  Christopher was alarmed and wanted to make sure that Jessica was okay.  Ehrlich told him that he cannot leave to go talk to his wife, and told Christopher that "you need to stay her with me.  I have some more questions for you."  As soon as Ehrlich made it clear to Christopher that he was not free to leave, then Christopher was "in custody" and Ehrlich's questions became a custodial interrogation.  Ehrlich was required to read Christopher's Miranda rights before continuing with a custodial interrogation but was so poorly trained that he did not recognize that he was engaging in a custodial interrogation – or he did not care and just intentionally ignored Christopher's Constitutional rights.  Christopher is smarter than Ehrlich and recognized that he had the right to remain silent, a right that he exercised.  Continuing to act like a poorly trained jerk, Ehrlich then asked Christopher:  "Is this the example you want to set in front of your

kids?"  Officer Ehrlich should have set the example, in front of the Fischer children, that the United States Constitution applies at all times, and that Christopher had a Constitutional right to remain silent during a custodial interrogation.  Continuing in a manner consistent with his lack of training and ignorance of the United States Constitution, Ehrlich then told Christopher that if he refused to answer his questions that he would arrest him. First of all, Christopher was already "under arrest," because Ehrlich made it clear that Christopher was not free to leave.  Second of all, when a citizen exercises his or her Constitutional Right to remain silent, that does *not* provide probable cause for an arrest.  At no time did Christopher Fischer raise his voice, swear at or try to provoke any of the Police Officers.  Officer Deedon was standing there in earshot and heard the exchange between Christopher Fischer and Officer Ehrlich.  Therefore Deedon knew there was no probable cause to arrest Christopher Fischer, but when Ehrlich motioned for Deedon to arrest Mr. Fisher, Deedon arrested Mr. Fischer without questioning the legality of the arrest.  Christopher was then handcuffed by Deedon in front of his children.  Both of the Fischer children were terrified and start crying.  T.F. was crying so hard he almost vomited.  The children were in a state of shock; the children were crying, "Daddy, why are they doing this?"  The Police Officers said they were taking the children back to

their mother but if "she kept it up, she would be arrested too and the children would be taken to Social Services."   Christopher asked to call his grandparents to come get the children, but the Police Officers refused to allow him to do so. Christopher asked what he was being charged with. Neither Deedon or Ehrlich had a response, because they correctly surmised that it is not a crime to refuse to answer questions during a custodial interrogation and they neglected to Mirandize Christopher Fischer.  It was an abuse of power to handcuff and arrest Mr. Fischer for a third class misdemeanor.  He should have been just issued a Summons.  Instead, these Officers maliciously and deliberately violated Mr. Fischer's Constitutional rights in front of his children, in order to cause the maximum amount of emotional distress to the Fischer children.   Deedon and Ehrlich escorted Christopher to a police car in handcuffs, and he was taken to the Broomfield jail and booked.  At the Broomfield jail, there is more lack of training that is evident:  the booking officer demanded that Christopher disclose whether or not he was a United States citizen.  When Christopher continued to refuse to answer questions until an attorney was present, the officer stated:  "you will not be allowed to speak to an attorney if you do not answer these questions." and "fine, we can call immigration in."   Christopher repeated his question to Deedon to disclose what the charge was.  Deedon refused to tell him.

16.     During this entire time, Jessica has been detained inside H&M by the other Police Officer Defendants.  When she told Officer Vaughn she did not understand what was happening and she wanted to call a friend who is a police officer, Vaughn tried to forcibly remove her iphone from her hands.  He grabbed her wrists, and twisted them in an attempt to confiscate her iphone, causing her great pain and distress.  Vaughn was so exuberant in his attempt to confiscate Jessica's iphone that he pushed her into a display in the H&M store and knocked it over.  Like many police officers these days, these poorly trained Broomfield police officers think that it is "illegal" for citizens to record or photograph them engaging in misconduct and will attempt to forcibly confiscate any smart phones that they see.  Jessica pleaded for help to the other customers in the area.  She asked other customers to film the encounter with their smart phones.  She verbalized that Vaughn was physically hurting her.

17.     Meanwhile, a fourth officer, Sergeant Heidi Walts, brought the children back into the store.  Walts then ran over to Jessica and handcuffs her for no reason while shouting:  "stop resisting!  Look what you are doing in front of your children."  The only reason why the children were there was because Walts needlessly brought them there, and Jessica was not "resisting," she was trying to record the officer misconduct.  There was no

arrest or attempted arrest that Jessica was "resisting," as was evident to a Police Officer with Sergeant Walts training and experience. Sergeant Walts is the Broomfield Police Officer responsible for training other officers on how to interact with the public. Therefore, she should have known better. There was zero probable cause to arrest Jessica Fischer. She never raised her voice, cursed at or tried to provoke the Police Officers. She was not "resisting" arrest, she was trying to keep Vaughn from unlawfully confiscating her iphone. Officer Vaughn had zero authority to confiscate her iphone, and she had no obligation to give him her iphone. Police officers (probably Vaughn) are then heard talking on the radio CAD audio to the Dispatcher about taking Jessica to the "Pokey too." That was unprofessional conduct.   After over half an hour, after reviewing the Security Camera footage, the handcuffs were taken off of Jessica   During this entire time, no one was bothered to insure the safety of M.F. and T.F., but Walts threatened to call Social Services and have the children put into foster care for the evening.   The children never got to see Santa Claus that night, and the Defendants have permanently ruined Christmas for these very young children.

18.    Sergeant Walts unlawfully took custody of the children temporarily.   The security camera footage clearly shows her physically

dragging the children out of the store while other Police Officer Defendants are leading their mother away in handcuffs.

19    The individual Defendants then spent the next hour and a half writing false written statements, littered with outright lies and exaggerations, in an attempt to cover up their misconduct.  For example, Nichole lied and stated that she "saw everything," which directly contradicted what she told the 911 dispatcher.  Another lie in her written statement was that Christopher was "swearing at [Drew] at the top of his lungs in the middle of the store" and "kept lifting his arms and moving forward"…"making aggressive gesticulations and getting in Drew's face" so that she was "worried that [Christopher] would try to punch my manager or start a fight," so *she* decided to call 911.  The security camera footage show that Drew directed Nichole to call the police, that Christopher was continually backing up from Drew and there was no physically aggressive gestures.  If there had been a man standing in the middle of the store yelling at the "top of his lungs," then obviously people would have noticed.  Instead, all the camera footage shows everyone (customers and employees) going about their business and not turning their heads or looking at anything.  If Nichole had been so "worried" that Christopher was going to "punch Drew in the face," then she would have said to the 911 Dispatcher.  Clearly, this is an after the fact

embellishment she took the liberty of engaging in.  Drew lied in his

statement that Christopher was "yelling," which was clearly contradicted by

the security camera footage.  Another lie in Drew's statement was that *he*

had to *back up from Christopher,* when the security camera footage clearly

shows that it was the other way around.  Drew also implied in his written

statement that Jessica fabricated falling with her son in her arms, but this is

clearly visible on the security camera footage.  Both Drew and the police

officers falsely claimed that Jessica knocked over the display when it was

Officer Vaughn who pushed her into the display when he improperly tried to

confiscate her iphone.  Officer Deedon repeatedly made false statements in

his report by claiming that he was directly interrogating Christopher Fischer

when in fact he was standing there watching and listening to Officer Ehrlich

interrogate Christopher.  Ehrlich's name is not even mentioned in Deedon's

report.  Deedon never spoke directly to Christopher Fischer until after he

handcuffed Mr. Fischer.

20.    On December 18, 2014, Christopher Fischer was falsely

charged with third class misdemeanor harassment (Broomfield County Court

case 2014M451), based on the lies told by Nichole Backus and Drew

Klescewski and based on Officer Ehrlich's lack of training and ignorance of

the law.  Ehrlich knew that refusing to answer questions during a custodial

interrogation cannot supply probable cause of the commission of any crime. The District Attorney recognized that Christopher Fischer was falsely charged and dismissed the charges on February 25, 2015. After comparing the false and exaggerated statements in the Defendants' written witness statements with the contents of the 911 call, the District Attorney recognized that the Defendants had no credibility and there was no case against Christopher Fischer. Mr. Fischer had sign for a personal recognizance bone to get out of jail the evening of December 14, 2014 and had to engage the services of an attorney. The cash in his wallet was stolen by Officers at the jail, allegedly to "apply" to the "booking fee."

**FIRST CLAIM FOR RELIEF Against the Broomfield Police Officer Defendants**
**42 USC §1983 -- For Denial of the Right to Familial Association, False Imprisonment, Unlawful Arrest without Probable Cause, Excessive Force in violation of the Fourth Amendment,   and Constitutional Malicious Prosecution in violation of the 4th, and 14th Amendments**

21.    The Broomfield Police Officer Defendants were acting under color of state law in their actions and omissions which occurred at all times relevant to this action.

22.    Officer Vaughn falsely arrested Jessica Fischer without probable cause, and brutalized her with excessive force when she tried to use her iphone. She has been damaged in an amount to be determined at trial.

23.     Sergeant Heidi Walts falsely arrested Jessica Fischer without probable cause.  She has been damaged in an amount to be determined at trial.

24.     Sergeant Heidi Walts took M.F. and T.F. into custody without probable cause.  Sergeant Heidi Walts interfered with Jessica Fischer's right to familial association with her Children without justification.  Jessica Fischer and her children have been damaged in an amount to be determined at trial.

25.     Officer Ehrlich and Deedon arrested Christopher Fischer without probable cause, and falsely charged him with a crime that never took place.  He has been damaged in an amount to be determined at trial

26.     As a direct and proximate result of the violation of the Plaintiffs' constitutional rights by the Police Officer Defendants, Plaintiffs suffered general and special damages, for physical injuries, pain and suffering, emotional distress, medical costs, lost wages, other out of pocket costs and are entitled to relief under 42 U.S.C §1983.  The actions of the Broomfield Police Officer Defendants were occasioned by actual malice or a reckless disregard for the rights of the Plaintiffs such as to permit the imposition of punitive damages to punish the Police Officer Defendants and deter such misconduct in the future.

27.     The Plaintiffs are entitled to their attorney fees and costs

pursuant to 42 U.S.C §1988.

### SECOND CLAIM FOR RELIEF Against H&M Defendants
### For malicious prosecution by Plaintiff Christopher Fischer and for
### outrageous conduct by all Plaintiffs

28.     At all times material to this complaint, Defendant Backus and

Klescewski were acting in the scope and course of their employment with

H&M.  Defendant H&M is vicariously liable for the torts committed by

Backus and Klescewski against the Plaintiffs on December 14, 2014.

29.     Nichole Backus and Drew Klescewski knowingly and

intentionally lied to the 911 dispatcher and the Broomfield Police officers in

order to procure the false arrest of Christopher and Jessica Fischer in front of

their children.  The actions of the Backus and Klescewski were occasioned

by actual malice or a reckless disregard for the truth and for the rights of the

Plaintiffs such as to permit the imposition of punitive damages to punish

Backus and Klescewski and deter such misconduct in the future.

30.     But for the lies told by Backus and Klescewski to the 911

dispatcher and the Broomfield police officers there was no probable cause to

charge Christopher Fischer for the alleged harassment of Drew Klescewski.

Backus and Klescewski are liable to Christopher Fischer for common law malicious prosecution.

31.    The lies told by Backus and Klescewski (to the 911 dispatcher and the Broomfield police officers) substantially contributed to the handcuffing and arrest of Christopher and Jessica Fischer in front of their little children.   Intentionally lying to police, by employees who are attempting to cover up the employees' negligence and premises liability, in order to procure the false arrest of parents in front of their little children, (who were just trying to report the wet floor hazard to a responsible employee), is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is atrocious and utterly intolerable in a civilized society, and has caused severe emotional distress to all four Plaintiffs, in an amount to be determined at trial.

32.    The H&M Defendants are liable to the Plaintiffs for compensatory and punitive damages for the Plaintiffs' severe emotional distress for the H&M Defendants' outrageous conduct.    The H&M Defendants are liable to Christopher Fischer for his compensatory damages, emotional distress and for punitive damages for malicious proseucution.

WHEREFORE, the Plaintiffs pray for entry of judgment for their compensatory and punitive damages, in an amount to be determined at trial,

for their physical injuries, pain and suffering, emotional distress, lost wages, and other out of pocket costs; for attorney fees against the Police Office Defendants and for their costs against all the Defendants; and all other relief the Court deems just and appropriate.

## PLAINTIFFS REQUEST A JURY TRIAL ON ALL ISSUES SO TRIABLE.

DATED September 13, 2015

Respectfully submitted,

/s/ Alison Ruttenberg

Alison Ruttenberg
PO Box 19857
Boulder, CO  80308
(720) 317-3834
Fax:  (888) 573-3153
Ruttenberg@me.com

**Attorney for Plaintiffs**

 Address of Plaintiffs:
7398 Augusta Drive, Boulder Colorado