**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1995-WJM-STV

CHRISTOPHER FISCHER,

    Plaintiff,

v.

DREW KLESCEWSKI;
NICHOLE BACKUS; and
H&M HENNES & MAURITZ LP ("H&M"),

    Defendants.

---

### ORDER ON MOTIONS *IN LIMINE*

---

Before the Court is Defendants' Motion *in Limine* (ECF No. 123) and Plaintiff's Motion *in Limine* (ECF No. 124). The Court rules as follows on these motions.

### I. PLAINTIFF'S MOTION (ECF No. 124)

**A.    Alleged Evidence of a "Pattern of Violent Conduct"**

Plaintiff Christopher Fischer ("Fischer") argues for the exclusion of six subjects or categories of evidence which he claims Defendants intend to use to "establish a 'pattern of violent conduct' by Mr. Fischer." (ECF No. 124 at 4.) Those subjects or categories are:

    1.    Fischer's arrest in Boulder County when he was a college freshman in 1991, and his subsequent charge for possessing burglary tools. He eventually pled to a nonviolent misdemeanor, resulting in a deferred judgment and sentence that Fischer successfully completed. (*Id*. at 1.)

2. A 1993 summons "for a minor non violent misdemeanor offense. There was never a conviction, charges were dismissed and the case was sealed." (*Id*. at 2.)

3. A 2009 citation in Boulder Municipal Court "for allegedly throwing a soda pop can at a meter maid." Apparently the meter maid could not identify who threw the can and the charges were dismissed. (*Id*.)

4. An incident where Fischer argued with a member of a band (apparently a rock band) with whom Fischer plays, leading the other band member to break Fischer's keyboard. (*Id*.)

5. An incident in which Fischer discovered that an independent contractor working for Fischer's company was "goofing around and playing video games instead of working." (*Id*.) Fischer dismissed the contractor who in turn assaulted Fischer, leading to felony charges against the contractor and, ultimately, three misdemeanor convictions after a jury trial. (*Id*. at 2–3.)

6. Portions of the testimony of "the Fischers' physician, Dr. Sanders, who is treating both Christopher and Jessica Fischer for Adult Attention Deficit Disorder." (*Id*. at 3.) "There is an occasional reference to marital squabbling (maybe 3–4 instances), sometimes with raised voices, in Dr. Sanders' [treatment] notes. However, there is no evidence of domestic violence of any kind." (*Id*.)[1]

---

[1] Defendants list Dr. Sanders as a trial witness. (*See* ECF No. 114 at 24.)

## B. Potential for Rebuttal or Impeachment Evidence

Defendants respond that they do not intend to introduce any evidence corresponding to Fischer's items 1–5 unless Fischer "open[s] the door and put[s] [his] nature for peacefulness at issue by arguing that his demeanor is inconsistent with confrontation, aggressive behavior, or hostility." (ECF No. 129 at 2.) The Court nonetheless finds that items 1–3 have no bearing, even in an impeachment or rebuttal context, on Fischer's disposition toward confrontation, aggressive behavior, or hostility; or, at a minimum, they could incite unfair prejudice and, in the context of item 3, undue delay given the likelihood that testimony about that incident may devolve into an ancillary mini-trial. *See* Fed. R. Evid. 403. Thus, Fischer's motion *in limine* is granted as to items 1–3.

The Court can make no definitive ruling on items 4 and 5 at this time, but provides the following guidance. If (a) Fischer or any of his witnesses "open the door" through testimony that his demeanor is inconsistent with Defendants' account of his behavior on the night in question, and (b) the incidents at issue in item 4 and/or item 5 featured words or conduct on Fischer's part that could reasonably be viewed as provoking the other party's violent reaction, then testimony about either or both of these incidents may be an appropriate inquiry on cross-examination "into relevant specific instances of [Fischer's] conduct." Fed. R. Evid. 405(a). Because the Court does not know whether Fischer intends to open the door, and the Court does not know any specifics about Fischer's behavior during the incidents described in items 4 and 5, any further ruling must await the evidence as it actually comes in at trial.

### C. Dr. Sanders's Testimony

As for Fischer's item 6, concerning Dr. Sanders's testimony, Defendants say that they "object to . . . the exclusion of Dr. Sanders' testimony as a fact witness, because this evidence is probative of damages and does not constitute improper opinion or character evidence." (ECF No. 129 at 3.) But this is not the basis of Fischer's motion *in limine*. He does not seek to exclude Dr. Sanders as a fact witness. To the contrary, Fischer states that Defendants "can only use [Dr. Sanders] as a fact witness." (ECF No. 124 at 5.) Fischer simply wants to prevent Defendants from using Dr. Sanders's knowledge of Christopher and Jessica Fischer's "squabbles" as evidence of Christopher Fischer's alleged violent temperament. (*Id*.) Fischer also wants to prevent Defendants from soliciting expert testimony from Dr. Sanders, given that no party has disclosed him as an expert.

Because Defendants do not contest the actual bases of Fischer's motion *in limine*, the Court deems them conceded and Fischer's motion will be granted as to item 6.

### II. DEFENDANTS' MOTION (ECF No. 123)

### A. September 2015 Facebook and E-Mail Evidence

Fischer intends to introduce as exhibits two records of electronic communication, namely, a private Facebook conversation between Defendants Klescewski and Backus in mid-September 2015, and a September 17, 2015 e-mail Backus sent in response to e-mails from Fischer's counsel. (ECF No. 123 at 3.) Both of these communications came in the wake of this lawsuit's filing on September 13, 2015. Defendants believe

4

these communications are irrelevant under Fed. R. Evid. 401 and otherwise unduly prejudicial under Fed. R. Evid. 403. (*Id*. at 3–4.)

The complete content and context of these communications is unclear. Defendants say that the two exhibits are attached to its motion *in limine*, but they are not. The Court must therefore rely on the parties' descriptions. Defendants say that "[b]oth messages contain negative statements about [Fischer]." (*Id*. at 3.) In the e-mail specifically, Backus apparently "references the Aurora Theater Shooting and says she believes it is 'better [to be] safe than sorry.'" (*Id*. (alterations in original).) Fischer says that Backus's communications do not just reference the Aurora Theater Shooting, but actually "compare[] [him] to the Aurora Theater Shooter" and refer to Christopher and Jessica Fischer as "that disgusting couple." (ECF No. 130 at 1.)

Defendants argue that these communications came nine months after the incident that spawned this lawsuit, and only days after Klescewski and Backus learned that they had been sued, and therefore have no relevance to their state of mind at the time of the original incident (December 14, 2014). (ECF No. 123 at 3.) Fischer counters that "[t]he fact that these Defendants continue[d] to remember Mr. Fischer with such an exaggerated animus, even so long after the incident, is probative and consistent with what happened immediately after they finished writing their written statements to the police on December 14, 2014." (ECF No. 130 at 2.) Fischer also claims that the evidence is appropriate to rebut Klescewski's and Backus's position that they were very afraid of Fischer on the night in question and therefore they might not be remembering what happened clearly. (*Id*. at 2–3.) Fischer believes that these e-mails somehow show that Klescewski and Backus were not truly afraid, and so not incapable

5

of remembering clearly.  (*Id*. at 3.)

The Court agrees with Fischer that these communications may be relevant under the basic Rule 401 test.  But the fact that Klescewski and Backus generated these communications in the immediate wake of learning that they had been sued produces a strong likelihood that their reactions were prompted in large part by the event of being sued.  The extent to which those reactions remain relevant to their state of mind nine months earlier would be difficult to tease out.  Thus, the Court also agrees with Defendants that the probative value of this evidence is substantially outweighed by the potential for unfair prejudice and confusing the issues.  Fed. R. Evid. 403.  Defendants' motion *in limine* is granted as to these communications.

### B. Other Slip-and-Fall Incidents at H&M Stores

Defendants seek to exclude evidence of other slip-and-fall incidents at H&M stores.  (ECF No. 123 at 4–5.)  Fischer agrees that such evidence is irrelevant.  (ECF No. 130 at 3–4.)  This portion of Defendants' motion *in limine* is therefore granted.

### C. Other Lawsuits Against H&M

Defendants seek to exclude evidence of other instances in which H&M has been sued on allegations similar to those here.  (ECF No. 123 at 5–7.)  Fischer again agrees that such evidence is irrelevant.  (ECF No. 130 at 4.)  This portion of Defendants' motion *in limine* is therefore granted.

### D. H&M's Size and Financial Condition

Defendants seek to exclude evidence of H&M's size and financial condition, as well as that of the law firm representing Defendants.  (ECF No. 123 at 7.)  Fischer once

again agrees that such evidence is irrelevant. (ECF No. 130 at 4.) This portion of Defendants' motion *in limine* is therefore granted.

**E.      Edited Surveillance Videos**

As noted in the Court's summary judgment order, Plaintiffs have taken the video from H&M's various surveillance cameras and edited it in a number of ways, specifically: (a) jumping between various camera angles, (b) synchronizing the audio of Backus's 911 call with the video, and (c) adding argumentative captioning. (ECF No. 121 at 3 n.1.) Defendants now object to these edited videos on various grounds, including lack of foundation, lack of testimony to confirm timestamps, and hearsay. (ECF No. 123 at 8–9.) This raises a host of issues, some of which the Court can rule on at this time and some of which it can only provide guidance.

First, the Court views any video which jumps between camera angles, and/or which includes synchronized external audio, as a Rule 1006 summary exhibit. The parties should proceed accordingly.

Second, as to captioning, the Court already ruled that, "absent a stipulation of the parties, these videos could not be admitted at trial with the captioning." (ECF No. 121 at 3 n.1.) Defendants' motion *in limine* shows that no such stipulation exists. Thus, the motion is granted to the extent Fischer seeks to introduce any video containing captioning inserted by him or anyone acting on his behalf.

Third, as to foundation for the editing process generally, Fischer claims that he and his wife edited the videos. (ECF No. 130 at 4–5 & n.2.) If true, and depending on Christopher's and/or Jessica's actual testimony in this regard, the Court sees no necessary barrier to admission of edited videos. The editing process and, for example,

anything the Fischers might have left out, are subjects for cross-examination and/or rebuttal testimony (including presentation of video segments excluded through the editing process).

Fourth, as to the accuracy of the timestamps inserted by H&M's surveillance system, H&M is free to attempt to impeach its own video through cross-examination or otherwise.

Fifth, as to synchronization of the 911 call, the Court again sees this as a matter for cross-examination. The Court has viewed the synchronized videos submitted at summary judgment and found no obvious error. Portions of the video showing Backus talking to the 911 operator appear to be precisely synchronized. The portions in which the 911 call audio continues while the video cuts away to a different angle are more difficult to verify, but there is nothing inherently improper about this as long as the H&M-inserted timestamps continue to count in sequence and without interruption between the various segments.

Sixth, there is no merit to Defendants' hearsay objection to the extent Backus is speaking. *See* Fed. R. Evid. 801(d)(2)(A). On the other hand, the 911 operator's statements might be hearsay if offered for the truth of the matter asserted, but the 911 operator makes very few *statements* (as opposed to asking questions). Whether hearsay or not, the 911 operator's words must be heard by the jury to provide context for Backus's statements. *See, e.g.*, *United States v. Tangeman*, 30 F.3d 950, 952 (8th Cir. 1994) (other half of defendant's conversations "offered to provide context for [the defendant's] admissions and not to prove the truth of the matters asserted therein"); *United States v. McDowell*, 918 F.2d 1004, 1007 (1st Cir. 1990) ("the other parts of the

conversations were properly admitted as reciprocal and integrated utterance(s), to put [the defendant's] statements into perspective and make them intelligible to the jury and recognizable as admissions" (citation and internal quotation marks omitted)). If Fischer seeks to rely on the 911 operator's words for their truth, the Court will address any objection at trial.

Seventh, the Court repeats what it said in its summary judgment order: "the Court leaves it to the Fischers to break the edited segments into discrete exhibits to which the H&M Defendants can stipulate or object. In other words, the Court does not wish to be presented with a 15-minute compilation . . . and then be required to rule on a second-by-second basis which segments are admissible and which are not." (ECF No. 121 at 3 n.1.) To ensure compliance with this directive, the Court will order Fischer to produce any segment designated on his Final Exhibit List to the Court no later than the Wednesday before trial is scheduled to begin. That will permit the Court an opportunity to determine ahead of time the issues that may arise regarding Fischer's edited video evidence.

F.     **Emotional Distress Suffered by Jessica Fischer and the Fischer Children**

Defendants seek to exclude any testimony or evidence from Jessica Fischer or the Fischer children about the suffering they claim to have experienced due to Defendants' alleged conduct. (ECF No. 123 at 9.) Defendants claim that this is now irrelevant given that Christopher Fischer is the only remaining plaintiff, and so only his damages are at issue. (*Id*.) Christopher Fischer responds that "part of his emotional distress was witnessing how upset his wife and children were (and still are) at his arrest and prosecution. The effect of his family members' anxiety and fear upon him and how

9

that caused him to suffer additional emotional distress is a relevant component of his emotional distress damages." (ECF No. 130 at 5.)

The Court agrees with Fischer that testimony from his wife and children regarding their emotional state(s) is relevant and not otherwise excludable under Rule 403 if the evidence shows that Fischer observed and was consciously aware of those emotional state(s). In other words, Christopher Fischer must "link up" the testimony from his wife and children to his own emotional state.

Defendants' motion *in limine* is accordingly denied on this issue. However, the Court may strike Jessica's and the children's testimony to the extent Christopher Fischer fails to make the necessary connection to his own emotional state. Defendants may also propose a limiting instruction regarding such testimony, *i.e.*, that the jury may only consider it for its effect on Christopher Fischer.

**G.     Insurance Coverage**

Defendants seek to exclude any evidence of whatever insurance coverage they may have. (ECF No. 123 at 10.) Fischer agrees that such evidence is irrelevant. (ECF No. 130 at 6.) This portion of Defendants' motion *in limine* is therefore granted.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion *in Limine* (ECF No. 123) is GRANTED IN PART and DENIED IN PART to the extent stated above;

2. Plaintiff's Motion *in Limine* (ECF No. 124) is GRANTED IN PART and DENIED IN PART to the extent stated above;

3. No later than **5:00 p.m. on May 17, 2017**, Fischer's counsel (or counsel's agent) must deliver to the undersigned's chambers a CD, DVD, or flash drive containing any segments of edited video that Fischer has designated on his Final Exhibit List; and

4. If Defendants wish to propose a limiting instruction regarding the testimony of Jessica Fischer and the Fischer children concerning their emotional reaction(s) to Defendants' alleged conduct, Defendants must do so on or before **May 4, 2017**. Before submitting such an instruction, Defendants must confer with Fischer. If Fischer stipulates to Defendants' proposed instruction, Defendants shall submit it as an additional stipulated instruction. If Fischer does not stipulate, Defendants shall submit their proposed instruction as an additional disputed instruction, and Fischer shall submit his objection and proposed alternative instruction no later than **May 10, 2017**.

Dated this 27th day of April, 2017.

BY THE COURT:

_____
William J. Martinez
United States District Judge